UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| VERONICA VASQUEZ RIVERA, *Individually and as Independent Executrix of the Estate of Felipe B. Rivera,* | § § § § | |
| *Plaintiff,* | § § | EP-16-CV-00192-DCG |
| v. | § § | |
| WELLS FARGO BANK, N.A., | § § § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court are Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") "Second Amended Motion for Summary Judgment and Brief in Support" (ECF No. 58) ("Defendant's Motion for Summary Judgment") filed on October 13, 2017, and Plaintiff Veronica Vasquez Rivera's ("Veronica") "Motion for Summary Judgment" (ECF No. 59) ("Plaintiff's Motion for Summary Judgment") filed on October 16. The parties' briefing on the motions was completed in November 2017.[1]

On March 12, 2018, pursuant to Federal Rule of Civil Procedure 56(f)(2), the Court notified the parties that it may resolve their disputes on a ground not raised by their motions and

---

[1] In connection with Wells Fargo's motion, Veronica filed her "Response to Defendant's Motion for Summary Judgment" (ECF No. 61), and Wells Fargo filed its "Reply in Support of Its Second Amended Motion for Summary Judgment and Brief in Support" (ECF No. 62) ("Reply to Defendant's Motion for Summary Judgment"). In connection with Veronica's motion, Wells Fargo filed its "Response to Plaintiff's Motion for Summary Judgment and Brief in Support" (ECF No. 60) ("Response to Plaintiff's Motion for Summary Judgment"), and Veronica filed her "Reply in Support of Her Motion for Summary Judgment" (ECF No. 63) ("Reply to Plaintiff's Motion for Summary Judgment"). The parties also submitted exhibits in support of their respective motions. Throughout this Memorandum Opinion and Order, Wells Fargo's exhibits and Veronica's exhibits are referenced as "Defendant's Exhibit(s)" and "Plaintiff's Exhibit(s)," respectively. In addition, all citations to the exhibits, except for the ones containing deposition transcripts, refer to the Electronic Case Filing (ECF) page numbers imprinted on the pages of the exhibit.

ordered the parties to submit supplement briefs addressing that ground.[2] The parties have complied with that order.[3] Having carefully considered the parties' arguments and record evidence, the Court, for the reasons that follow, DENIES Veronica's motion and GRANTS Wells Fargo's motion as supplemented by additional briefs.

## I. BACKGROUND

### A. Factual Background

Unless otherwise stated, the following facts are undisputed. In 1978, Felipe B. Rivera ("Felipe"), now deceased, and Mary Collins f/k/a Mary Rivera ("Mary") married.[4] In September 1988, they bought a home located at 5828 Bagdad Way, El Paso, Texas 79924 ("Property"), which is the subject of this lawsuit.[5] In July 2006, they divorced, pursuant to a divorce decree entered by a divorce court.[6] Regarding the Property, the decree stated only that: "IT IS FURTHER ORDERED AND DECREED that the [P]roperty and all improvements located thereon . . . shall be refinanced and MARY RIVERA shall receive $40,000.00 as her share of the house's net equity to be paid within ninety (90) days of May 22, 2006."[7] By the time of the

---

[2] Notice & Order for Briefing, ECF No. 66.

[3] *See* Pl.'s Suppl. Br., ECF No. 67; Def.'s Suppl. Br., ECF No. 68; Def.'s Resp. to Pl.'s Suppl. Br., ECF No. 69; Pl.'s Resp. to Def.'s Suppl. Br., ECF No. 70.

[4] Def.'s Ex. J at 8:11–14 [hereinafter "Mary Dep."], ECF No. 58-10.

[5] Pl.'s Ex. L at 6–8, ECF No. 59-1.

[6] First Am. Compl., Ex. 1, ECF No. 35.

[7] *Id.* at 12.

divorce, Mary resided in Michigan.[8] Felipe continued to reside at the Property, and Veronica moved in and began to reside there in 2006.[9]

In June 2009, Mary filed a petition with the divorce court to enforce Felipe's obligations under the divorce decree. Her petition alleged, *inter alia*, that Felipe "failed to turn over her $40,000.00 as her share of the net equity for her interest in the marital residence of the parties at 5828 Baghdad. El Paso. Texas."[10] She requested that a lien be placed against the Property to secure the unpaid payments in the amount of $40,000.[11]

On August 26, 2009, Felipe obtained a reverse mortgage loan from Wells Fargo by executing a Closed-End Fixed Rate Note ("Note") and a Texas Home Equity Conversion Loan Agreement ("Loan Agreement") that was secured by a Closed End Fixed Rate Home Equity Conversion Deed of Trust ("Deed of Trust").[12] The Deed of Trust secured repayment of the Note by creating a lien interest in the Property.[13] Felipe received a lump sum of $28,253.37 under the Loan Agreement.[14] Section 2.2.2 of the Loan Agreement states that the lump-sum money "shall be used by Lender to discharge the lien[] on the Property listed in the Schedule of Liens (Exhibit 2) attached to and made a part of this Loan Agreement";[15] the Schedule of Liens,

---

[8] Divorce Decree at 10; Mary Dep. at 20:16–17 ("I lived in Michigan.").

[9] Divorce Decree at 10; Def.'s Ex. I at 2:17–6:2 [hereinafter "Veronica Dep."], ECF No. 58-9.

[10] Def.'s Ex. K at 3, ECF No. 58-11; *see also id.* at 4 ("Respondent [*i.e.*, Felipe] has not paid to Petitioner [*i.e.*, Mary] money that was awarded in the decree previously entered by the Court.").

[11] *Id.* at 4.

[12] Pl.'s Resp. to Def.'s Proposed Undisputed Facts at 1, ECF No. 61-1.

[13] *Id.*

[14] *Id.* at 1–2.

[15] Def.'s Ex. A at 17 (Ex. A-2), ECF No. 58-1.

in turn, lists "Mary Rivera" and "$40,000."[16] Mary did not sign the Note, the Loan Agreement, or the Deed of Trust.[17]

For services in connection with the loan, Wells Fargo had retained Lawyers Title of El Paso, a title insurance company.[18] Pursuant to its closing conditions for the loan, Wells Fargo required the title company to have Mary execute a special warranty deed to remove her from the title of the Property.[19] Sometime prior to August 26, 2009, Mary signed a pay-off statement and provided it to the title company.[20] Also prior to that date, Mary agreed to sign a special warranty deed in exchange for $40,000.[21] Subsequently, Mary signed a special warranty deed, granting her interest in the Property to Felipe before a notary public in Michigan.[22] The parties dispute when Mary signed the deed: according to Wells Fargo, August 26, 2009, but according to Veronica, August 29, 2009.[23] At some point, Mary received $40,000, which was paid from the

---

[16] *Id.* at 21.

[17] Def.'s Exs. A–C, ECF Nos. 58-2 – 58-3.

[18] Pl.'s Ex. M-4, ECF No. 59-6.

[19] Def.'s Ex. H at 8–9. Def.'s Resp. to Pl.'s Proposed Undisputed Facts at 2, ECF No. 60-1.

[20] Def.'s Ex. H at 12; Pl.'s Resp. to Def.'s Proposed Undisputed Facts at 2.

[21] Pl.'s Ex. M-4 at 1; Pl.'s Resp. to Def.'s Proposed Undisputed Facts at 2.

[22] Def.'s Ex. G, ECF No. 58-1.

[23] The parties focus heavily on this dispute in their initial briefs in support of their motions; however, this dispute is not material to the Court's ruling on the un-asserted ground. Nevertheless, for the sake of completeness, the Court summarizes the parties' dispute on this point.

The deed contains a pre-printed execution date as follows: "EXECUTED this date: August 26, 2009," and a partly pre-printed acknowledgement date as follows: "This instrument was acknowledged before me on August 29th[,] 2009, by Mary L. Rivera"; only the date (April 29, 2009) was written by hand. First Am. Compl., Ex. 2. First Am. Compl., Ex. 2. A notary public commissioned by the State of Michigan signed the acknowledgment. *Id.* According to Mary's testimony, at the time, she lived in Michigan; she received the special warranty deed with the pre-printed execution date (August 26, 2009) by mail, UPS, or another carrier; on the day she received the deed or on the next day, she went to a notary public at her bank in Michigan; and there, before the notary, she signed the deed, presumably, therefore,

proceeds of the loan.[24]

On August 28, 2009, Felipe and Veronica were married by a judge.[25] Felipe died in February 2014.[26] Following his death, his estate was probated: Veronica was appointed independent executrix of his estate, and letters of testamentary were issued in April 2015 by the probate court.[27] Veronica is the heir to the Property per Felipe's will.[28] To date, she continues to reside at the Property.

The loan became due upon Felipe's death.[29] When Veronica failed to cure the default, Wells Fargo initiated foreclosure proceedings.[30] In February 2016, Wells Fargo mailed a notice informing Veronica that the loan had been accelerated and that the Property was scheduled to be sold at foreclosure sale on May 3, 2016.[31]

---

on August 29, 2009, when the notary signed the acknowledgment. Mary Dep. 14:2–15:23; 21:1–16; 24:3–8.

[24] Pl.'s Resp. to Def.'s Proposed Undisputed Facts at 2. At deposition, Mary testified as follows:

Q. And do you remember how you got the money?

A. A check, but I don't remember if it was [Felipe's] personal check or the bank check or whose.

Mery Dep. 17:12–14.

[25] Def.'s Resp. to Pl.'s Proposed Undisputed Facts at 1–2.

[26] Pl.'s Resp. to Def.'s Proposed Undisputed Facts at 3.

[27] Def.'s Resp. to Pl.'s Proposed Undisputed Facts at 2–3.

[28] *Id.* at 3.

[29] Pl.'s Resp. to Def.'s Proposed Undisputed Facts at 3.

[30] *Id.*

[31] Def.'s Ex. E at 3, ECF No. 3; Notice of Removal, Ex. B-1 at 4, ECF No. 1.

### B. Procedural Background

On May 2, 2016, Veronica, in her individual capacity and as the independent executrix of Felipe's estate, brought this lawsuit against Wells Fargo in the 243rd Judicial District Court in El Paso County, Texas.[32] In June 2016, Wells Fargo removed the case to federal court, premised upon diversity jurisdiction. 28 U.S.C. §§ 1332(a), 1141, 1146.

In June 2017, Veronica filed her First Amended Complaint (ECF No. 35). Therein, she claims the Property as her homestead and asserts a cause of action under the Texas Constitution, Article XVI, §§ 50(a)(7), 50(k)(1), and 50(c), challenging the reverse mortgage lien.[33] As relief, she asks the Court to declare the lien is limited to an undivided 50 percent share of the Property and permanently enjoin Wells Fargo from foreclosing on her homestead unless the foreclosure is limited to an undivided 50 percent share of the Property.[34]

## II. STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of fact exists when evidence is sufficient for a reasonable jury to return a verdict for the non-moving party, and a fact is material if it 'might affect the outcome of the suit.'" *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986))). In deciding whether a genuine dispute as to material fact exists, a trial court considers all of the evidence in the record and "draw[s] all reasonable inferences in favor of the nonmoving party," but "refrain[s] from making credibility

---

[32] Notice of Removal, Ex. B-1.

[33] First Am. Compl. ¶¶ 4, 15_21.

[34] *Id.* ¶ 22.

determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation and internal quotation marks omitted).

Procedurally, the party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (alterations in original) (quotation marks and citation omitted). If the moving party succeeds, "the onus shifts to the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and citation omitted). However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Davis v. Fort Bend Cty.*, 765 F.3d 480, 497 n.20 (5th Cir. 2014) (quotation marks and citation omitted).

### III. DISCUSSION

In this action, Veronica challenges the validity of the reverse mortgage lien under the Texas Constitution. Compl. ¶¶ 15–21; Pl.'s Mot. for Summ. J. at 8–9. Article XVI, Section 50 of the constitution provides that "[n]o mortgage, trust deed, or other lien on the homestead shall ever be *valid* unless it secures a debt described by this section[.]" Tex. Const. art. XVI, § 50(c) (emphasis added); *see also Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 544 (Tex. 2016) ("This language [in Section 50(c)] is clear, unequivocal, and binding."). Section 50 protects the homestead from foreclosure for the payment of debts subject to eight exceptions, one of which covers reverse mortgages. Tex. Const. art. XVI, § 50(a) ("The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all

debts except for: . . . (7) a reverse mortgage . . . ."); *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474, 477 (Tex. 2016). As critical in this case, Section 50(k)(1) defines "reverse mortgage" as "an extension of credit[] . . . that is secured by a voluntary lien on homestead property created by a written agreement *with the consent of each owner and each owner's spouse.*" Tex. Const. art. XVI, § 50(k)(1) (emphasis added).

Veronica argues that on August 26, 2009, when the lien was created, she was an "owner," but she did not consent to the lien. Pl.'s Mot. Summ. J. at 11; *see also* Tex. Const. art. XVI, § 50(k)(1) (". . . a voluntary lien . . . created by a written agreement *with the consent of each owner* [*i.e.*, Mary] and each owner's spouse." (emphasis added)). Therefore, Veronica posits, if the lien is valid at all, it is limited to 50 percent undivided interest in the Property, which was all that Felipe owned on that day. *Id.* at 10–11. Wells Fargo responds that Mary consented to the creation of the lien. Resp. to Pl.'s Mot. for Summ. J. at 8-12. In support, Wells Fargo points to various actions by Mary, including her execution of the special warranty deed (which Wells Fargo assumes *arguendo* occurred on August 29, 2009), as well as her deposition testimony. *Id.* at 11–12; *see also* Reply to Def.'s Mot. for Summ. J. at 7–8. Veronica counters that even if Mary consented by signing the special warranty deed on August 29, it was too late for the lien to become valid: by then, Veronica and Felipe were married for a day (they married on August 28), but Veronica did not consent to the lien. *See* Pl.'s Mot. Summ. J. at 11; Reply to Pl.'s Mot. for Summ. J. at 5–6; *see also* Tex. Const. art. XVI, § 50(k)(1) (". . . a voluntary lien . . . created by a written agreement *with the consent* of each owner and *each owner's spouse* [*i.e.*, Veronica]." (emphasis added)).

As their initial arguments reveal, Veronica asserts—without citing any case, binding or otherwise—and Wells Fargo assumes that on August 26, 2009, when the challenged lien was

created, Mary was an "owner," as that term is used in Article XVI, Section 50(k)(1)[35] and thereby further assumes that Mary's consent was required for the lien creation for it to be valid under Section 50(c). It appearing to the Court that, that assertion and assumption may not be warranted here, on March 12, 2018, the Court issued an order notifying the parties that it may decide their motions on whether Mary's consent was required, see Fed. R. Civ. P. 56(f)(2) ("After giving notice and a reasonable time to respond, the court may[] ... grant the motion on grounds not raised by a party."),[36] and ordered for additional briefing on the following issue:

> Whether or not, under the facts of this case, Mary's consent to the creation of the lien was required for the lien to be valid under Sections 50(c), as that section applies to Sections 50(a)(7) and 50(k)(1). Stated another way, whether or not Mary was an "owner" on August 26, 2009, as that term is used in Section 50(k)(1).

Notice & Order for Briefing at 2. The Court notified the parties that that issue depends on what homestead interest Mary had in the Property on August 26—which, in turn, may depend on a proper construction of Mary and Felipe's divorce decree. Having received the parties' additional briefs, the Court now addresses this issue.

The parties cite no case interpreting "owner," as the term appears in Section 50(k)(1). Texas agencies, which have the delegated authority to interpret Article XVI, Section 50 of the

---

[35] See Pl.'s Mot. for Summ. J. at 11 ("Mary was an owner and did not consent to the loan."); Def.'s Mot. for Summ. J. at 14 ("Assuming arguendo that Mary Collins was still a co-owner of the Property on August 26, 2009 when the Loan was executed ...."); Pl.'s Mot. for Summ. J. at Resp. to Def. Mot. for Summ. J. at 13 n.6 (arguing that Wells Fargo "does not dispute that before the loan was made Felipe and Mary were co-owners of the property"); Resp. to Pl.'s Mot. for Summ. J. at 10 (arguing "co-owners need only give consent to the creation of a reverse mortgage lien." (citing Tex. Const., Art. XVI, § 50(k)(1))); Reply to Pl.'s Mot. for Summ. J. at 5 (arguing that Wells Fargo "cites no case resolving whether a co-tenant's divorce decree, acceptance of money, a deed, or any other act or random document constitute consent sufficient for strict compliance with constitutional mandates required for ... as reverse mortgages").

[36] The Court has not been cited to an on-point case. Moreover, the arguments the parties make and the cases they rely on, in their initial briefs in support of the motions are not particularly helpful in deciding their disputes on any of the summary judgment grounds they initially raised. The majority of their arguments focus on when—August 26 or 29, 2009—Mary executed the special warranty deed.

constitution, *see Wood*, 505 S.W.3d at 574, have interpreted "owner," as the term appears in a parallel constitutional provision regarding home-equity loans,[37] to mean "[a] person who has *the right to possess*, use, and convey, individually or with the joinder of another person, all or part of the homestead," 7 Tex. Admin. Code § 153.1(13) (emphasis added). Sine qua non of homestead ownership interest is the possessory right. *See Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 130 (Tex. 1991) (Section 50's "homestead protection . . . can arise only in the person or family who has a present possessory interest in the subject property."); *In re Odes Ho Kim*, 748 F.3d 647, 661–62 (5th Cir. 2014) ("When a spouse no longer possesses the real property that was impressed with homestead rights, [that spouse's] homestead rights in that property cease to exist." (citing cases)).

The Court turns to Mary and Felipe's divorce decree to ascertain what homestead interest each had in the Property as a result of their divorce. When interpreting a divorce decree, which is a type of judgment, Texas courts apply the general rules regarding construction of judgments. *Wilde v. Murchie*, 949 S.W.2d 331, 332 (Tex. 1997). "Courts should not give conclusive effect to the judgment's use or omission of commonly employed decretal words, but should instead determine what the trial court adjudicated from a fair reading of all the judgment's provisions." *Id.* at 333. If the decree, read as a whole, is unambiguous as to the property's disposition, then courts must effectuate the decree as written. *Id.* If the decree is ambiguous—*i.e.*, subject to more than one reasonable interpretation—then courts must review the record along with the

---

[37] The section relating to home-equity loans contains an identical consent provision: "an extension of credit that[] . . . is secured by a voluntary lien on the homestead created under a written agreement with the consent of each owner and each owner's spouse." Tex. Const. art. XVI, § 50(a)(6)(A); *see also Fin. Com'n of Tex. v. Norwood*, 418 S.W.3d 566, 571 (Tex. 2013) ("Exceptions for certain home equity loans and for reverse mortgages[] [were] finally adopted by constitutional amendment in 1997, effective January 1, 1998."); *Wood*, 505 S.W.3d at 545 ("We construe constitutional provisions and amendments that relate to the same subject matter together and consider those amendments and provisions in light of each other.").

decree to aid in its construction. *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003). Whether a divorce decree is ambiguous is a question of law. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983).

*Wilde* is particularly instructive here. Although the divorce decree in *Wilde* did not expressly divest the wife of her interest in the community homestead, the decree liquidated her equity interest in the home and stipulated that the husband assumed the debts on that property; the Texas Supreme Court concluded that the decree indicated the divorce court's decision "to award the home solely to [the husband]," *Wilde*, 949 S.W.2d at 333, that is, "the divorce court's decision that the husband take *sole possession* of the community home," *Tex. Workers' Comp. Ins. Fund v. Lopez*, 21 S.W.3d 358, 362 (Tex. App.—San Antonio 2000, pet. denied) (emphasis in original) (interpreting *Wilde*). The actions of the parties after the divorce (he had sole possession for twenty years and she sought only to collect the monetary award that, as stated in the decree, included her equity in the homestead) further supported the court's conclusion. *Wilde*, 949 S.W.2d at 333.

Here, as in *Wilde*, the divorce decree does not expressly divest Mary of her interest in the Property, but it liquidated her equity interest in the home. The decree states: "IT IS FURTHER ORDERED AND DECREED that the [P]roperty and all improvements located thereon . . . shall be refinanced and MARY RIVERA shall receive $40,000.00 as her share of the house's net equity to be paid within ninety (90) days of May 22, 2006." First Am. Compl., Ex. 1 (divorce decree) at 12. The decree, as a fair reading indicates, stipulated that Felipe assumed all debts on the Property, as he was ordered to refinance the Property. The Court therefore concludes that the divorce court awarded the Property *solely* to Felipe. Consequently, the Court finds that the divorce court awarded Felipe *sole possession* of the Property, *Lopez*, 21 S.W.3d at 362, and

thereby awarded him "full homestead right" in the Property, *Hankins v. Harris*, 500 S.W.3d 140, 146–47 (Tex. App.–Houston [1st Dist.] 2016, pet. denied) (holding that "[a]fter the divorce, the remaining spouse [as here, Felipe] received the *full homestead interest* pursuant to the divorce decree," which included stipulations that the entire property would be transferred to that spouse in exchange for financial consideration." (emphasis added)). Further because the decree awarded sole possession of the Property to Felipe, Mary had no possessory interest in the Property. On August 26, 2009, therefore, Mary was not an "owner" under the Texas Constitution's Article XVI, Section 50(k)(1), and therefore, her consent was not required for the reverse mortgage lien to be valid under Section 50(c).

So, what interest did Mary retain in the Property after the divorce? "Under Texas law, a divorce decree by which the ex-husband agrees to pay the ex-wife a sum of money in consideration for the conveyance of her interest in real property creates an equitable vendor's lien for the ex-wife." *Perry v. Perry*, 512 S.W.3d 523, 529 (Tex. App.—Houston [1st Dist.] 2016, no pet.). "Although the ex-wife no longer has title to the property, she can use the lien as an encumbrance against the property to satisfy the debt." *Id.* "If the ex-husband fails to satisfy the debt after the lien matures, the ex-wife may foreclose on and force the sale of the property." *Id.* The Court agrees with Wells Fargo, *see* Def.'s Suppl. Br. at 4, ECF No. 68, and concludes that Mary had an equitable vendor's lien on the Property, which is not a homestead interest, *compare Laster*, 826 S.W.2d at 129 ("In Texas, the homestead right constitutes an estate in land."), *with Karigan v. Karigan*, 239 S.W.3d 436, 439 (Tex. App.—Dallas 2007, no pet.) ("An equitable lien is not an estate in the thing to which it attaches, but merely an encumbrance against the property to satisfy a debt.").

These conclusions are further bolstered by Mary and Felipe's post-divorce actions. *See Wilde*, 949 S.W.2d at 333 (considering former husband and wife's post-divorce actions in construing a divorce decree). By the time of their divorce, Mary had moved out of the Property and lived in Michigan, but Felipe continued to live at the Property; he lived there until his death in 2014. *See* Divorce Decree at 10; Mary Dep. at 20:16–17; Veronica Dep. at 5:17–6:2. The evidence indicates that Mary understood that the decree awarded Felipe the full ownership of the Property. *See* Mary Dep. at 26:3 ("I guess. It was his property."). In a Designation of Homestead and Affidavit that Felipe signed on August 26, 2009, in connection with the loan at issue, he represented that no other party had a claim to ownership or possession of the Property. Def.'s Ex. A at 26. The Loan Agreement, which Felipe signed, listed Mary as a lien holder. *Id.* at 17, 21. Moreover, in June 2009, Mary sued Felipe to recover $40,000 under the decree, requesting that a lien be placed against the Property to secure the unpaid payments in the amount of $40,000. Def.'s Ex. K at 4. Sometime before Felipe executed the Deed of Trust on August 26, 2009, Mary agreed to sign a special warranty deed in exchange for $40,000 and at some point, received $40,000, which was paid from the proceeds of the loan. Pl.'s Ex. M-4 at 1; Pl.'s Resp. to Def.'s Proposed Undisputed Facts at 2. Mary testified that she did not want to keep the Property or have anything to do with the Property; all that she wanted was the $40,000 awarded in the divorce decree.[38]

---

[38] At deposition, Mary testified as follows:

Q. . . . The divorce decree required you and Mr. Rivera to in some form or fashion agree to some framework to allow you to get $40,000 of equity out of the property; is that right?

A. I don't know. I don't know. *All I know is he owes me $40,000 out of the house. I don't know how he was to get it or what.*

Q. Right.

In sum, the Court concludes that as a matter of law, on August 26, 2009, when Felipe executed the Deed of Trust creating the reverse mortgage lien, Mary's consent was not required for the lien to be valid under the Texas Constitution's Article XVI, Sections 50(c), as that section applies to Sections 50(a)(7) and 50(k)(1).[39] Consequently, Veronica's claims against Wells Fargo must be dismissed.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Defendant Wells Fargo Bank, N.A.'s "Second Amended Motion for Summary Judgment and Brief in Support" (ECF No. 58), as supplemented by additional briefs (ECF Nos. 68, 69) is **GRANTED** and Plaintiff Veronica Vasquez Rivera's "Motion for Summary Judgment" (ECF No. 59) is **DENIED**.

---

> A. But when he –
>
> Q. So you had –
>
> A. he or the bank asked me if it was okay, I said yes.
> Q. Okay. So you communicated that it was okay for him to get the money through -- to you through a loan on the property?
>
> A. *I guess. It was his property.*
>
> Q. You did not have any -- You did not want to keep the property. You wanted nothing to do with the property; is that correct?
>
> A. *Absolutely. I'm done.*

Mary Dep. at 25:7–26:7 (emphasis added); *see also id.* at 18:4 ("I just wanted my money. I don't care how he got it.").

[39] Along with her supplemental briefs, Veronica has submitted a July 28, 2009 correspondence from Felipe to the divorce court regarding Mary's petition to enforce Felipe's obligations under the divorce decree, where he stated: "As for the division of the house, we had a verbal agreement that I was to pay her the $40,000 when the house was sold." Pl.'s Resp. to Def.'s Suppl. Br. at 3, ECF No. 70. In the same correspondence, however, Felipe stated that "[t]he house has not sold," and that he "ha[d] applied for a loan and per Mr. Ignacio Segura . . . , Wells Fargo Bank representative; Mary L. Rivera will be getting the sum of $40,000.00 directly from the bank within 2 weeks." *Id.*, Ex. O, ECF No. 70-1. Veronica has also submitted a webpage print-out of a record from the El Paso County Appraisal, which lists Mary and Felipe as "owners." Pl.'s Suppl. Br. at 6, ECF No. 67; *Id.*, Ex. N, ECF No. 67-1. None of these submissions support the propositions Veronica advances based thereon or undermine the Court's interpretation of the divorce decree in view of the cases cited here.

IT IS FURTHER ORDERED that Plaintiff Veronica Vasquez Rivera's claims against Defendant Wells Fargo Bank, N.A. are **DISMISSED WITH PREJUDICE.**

IT IS MOREOVER ORDERED that all other motions, if any pending, are **DENIED AS MOOT.**

IT IS FINALLY ORDERED that the District Clerk shall **CLOSE** this case.

So ORDERED and SIGNED this 28th day of March 2018.

DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE